IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.                                            Criminal No.:  ELH-13-0629

MICHAEL EMMANUEL SMITH
Defendant.

**MEMORANDUM OPINION**

Defendant Michael Emmanuel Smith, who is self represented, has filed a motion for
compassionate release, pursuant to 18 U.S.C. § 3582(c)(2).  ECF 154.  He also filed a supplement
to his motion (ECF 158) (collectively, the "Motion"), with exhibits.  The government opposes the
Motion.  ECF 167.  It has also filed exhibits.  ECF 166.  Smith has not replied.

No hearing is needed to resolve the Motion.  For the reasons that follow, I shall deny the
Motion.

**I.        Background[1]**

Smith was arrested by state law enforcement on September 26, 2013.  On November 7,
2013, Smith and a codefendant were federally charged with conspiracy to commit Hobbs Act
Robbery (Count One); Hobbs Act Robbery (Counts Two, Four, and Six); and brandishing a firearm
in furtherance of a crime of violence (Counts Three, Five, Seven).  *See* ECF 1 (Indictment).  A
Superseding Indictment was filed on January 16, 2014, adding another defendant. ECF 27.

On July 2, 2014, the defendant entered a plea of guilty to Hobbs Act robbery (Count Two),
in violation of 18 U.S.C § 1951(a), and brandishing a firearm in furtherance of a crime of violence

---

[1] The case was originally assigned to Judge William D. Quarles, Jr. It was reassigned to
me due to the retirement of Judge Quarles.

(Count Three), in violation of 18 U.S.C. § 924(c). ECF 60.  The plea was tendered pursuant to a Plea Agreement.  ECF 61.

Under the Plea Agreement, the government agreed to recommend a sentence within the Sentencing Guidelines ("U.S.S.G." or "Guidelines").  ECF 61, ¶ 9.  In the factual stipulation of the Plea Agreement, the defendant agreed that he "participated in at least seven armed commercial robberies" in the Baltimore area in July 2013.  *Id.* ¶ 6(a).  The conspirators generally stole cars for use during the robberies, and then committed the robberies by using and brandishing a firearm.  *Id.*

Sentencing was held on October 1, 2014.  ECF 88.  At the time of sentencing, the defendant was 28 years of age.  *Id.* at 2. The Presentence Report ("PSR," ECF 67) reflected that defendant began using drugs and consuming alcohol at the age of 12.  *Id.* ¶¶ 135, 136.  In addition, he has struggled with mental health issues and was taking medication for asthma and a heart murmur. *Id.* ¶¶ 132-134.

According to the PSR, defendant had a final offense level of 27 for Count Two. *Id.* ¶ 77. As to Count Three, by statute the Court was required to impose a sentence of at least seven years, consecutive to the term for Count Two.  *See* 18 U.S.C. § 924(c)(1)(A)(i).

The defendant had 12 criminal history points. *Id.* ¶ 103. But, because the instant offense was committed while the defendant was on probation, two more points were added under U.S.S.G. § 4A1.1(d). *Id.* ¶ 104.  Thus, Smith had a total of 14 criminal history points, which corresponds to a Criminal History Category of VI. *Id.* ¶ 105.

Based on a final offense level of 27 for Count Two and a Criminal History Category of VI, Smith's advisory Guidelines for Count Two called for a total sentence of 130 to 162 months.  *Id.* ¶ 117.  As to Count Three, the Guidelines corresponded to the mandatory minimum term of

imprisonment of 84 months, consecutive. *Id.* ¶ 116; *see* U.S.S.G. § 2K2.4.  Thus, the Guidelines called for a total sentence of 214 to 246 months.

Judge Quarles sentenced the defendant to a total term of 144 months, with credit for time served since September 26, 2013.  ECF 88 (Judgment).

Smith, who is now 34 years of age, is serving his sentence at Forrest City Medium. He has served about 90 months of his sentence, or roughly 63%, exclusive of good conduct credit. Smith has a projected release date of March 21, 2024.

Defendant has exhausted his administrative remedies; he sought compassionate release from the Warden in June 2020, without success. ECF 158-2.

## II.  Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying

compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.  *McCoy*, 981 F.3d at 276.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276.  But, in U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might warrant compassionate release.  *See McCoy*, 981 F.3d at 276. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C).  *McCoy*, 981 F.3d at 276. However, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act in December 2018.  *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."  U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows:

1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)      **Medical Condition of the Defendant**.—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)  suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances.  Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 App. Note 1(D).  This is the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

The  BOP  regulation  appears  at  Program  Statement  5050.50,  Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205.

However, the Court may not rely on the Program Statement.  Rather, the Court must consider the Sentencing Commission's policy statements.  *United States v. Taylor*, 820 F. App'x 229, 229-30 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

As noted, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").  However, as indicated, the policy statement in § 1B1.13 of the Guidelines was last updated in November 2018, before the enactment of the First Step Act.  Thus, it is only "directed at BOP requests for sentence reductions."  *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13).  In other words, "[b]y its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."  *Id.* at *7; *see also United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-12 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."  *McCoy*, 981 F.3d at 283.  Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See, e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 829 Fed. App'x 607, 608-9 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). But, compassionate release is a "rare" remedy. *Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.  COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[3] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

---

[2] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted). And, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

The Court must also underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. As of March 3, 2021, COVID-19 has infected more than 30.2 million Americans and caused over 549,00 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Mar. 29, 2021).

Unfortunately, there is currently no cure or proven treatment that is generally available for the virus. But, the country has recently seen the rollout of three vaccines for COVID-19 (Pfizer,

Moderna, and Johnson & Johnson). The vaccines were initially made available to health care workers and the elderly in nursing homes.   But, the criteria for eligibility has expanded considerably, although it varies among the States.

Notably, the BOP published "COVID-19 Vaccine Guidance" on January 4, 2021 (version 7.0). *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Administration of the COVID-19 vaccine (Pfizer and Moderna) will "align with [recommendations of] the Centers for Disease Control and Prevention." *Id.* at 4. Therefore, once the BOP receives the vaccine, a prisoner at heightened risk will receive priority for receipt of the vaccine. *Id.* at 6.

The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, F*ederal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec.   21,   2020),   https://www.forbes.com/sites/walterpavlo/2020/12/21/   federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f. As of March 29, 2021, the BOP had 125,835 federal inmates and 36,000 staff. And, by that date, the BOP had administered 100,513 vaccine doses to staff and inmates. *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 29, 2021).

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, and again on July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes. *Id.*  The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

In addition, the CDC created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed December 9, 2020).  Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2; *Senate Judiciary Hrg. Transcript on Incarceration during COVID-19*, REV.COM (June 2, 2020) (Testimony of BOP Dir. Michael Carvajal at 47:00) ("Prisons by design are not made for social

distancing. They are on [sic] the opposite made to contain people in one area.").  Indeed, prisoners have little ability to isolate themselves from the threat posed by the coronavirus.  *Id*.; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high.").

To illustrate, prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. *See* Kim Bellware, *Prisoners and Guards Agree About Federal Coronavirus Response: 'We do not Feel Safe*,' WASH. POST (Aug. 24, 2020) (reporting use of non-reusable masks for months and a lack of transparency around policies for PPE and testing). They do not get to decide where, when, or how to eat or sleep.  Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread.  *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  The DOJ has adopted the position

that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Former Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Nevertheless, as with the country as a whole, the virus persists in penal institutions.[4]  As of March 29, 2021,  BOP reported that 413 inmates out of a total of 125,835 inmates, and 1,268 BOP staff out of some 36,000 staff members, currently test positive for COVID-19; 46,975 inmates and 5,440 staff have recovered from the virus; and 228 inmates and four staff members have died from the virus.    Moreover,  the BOP has completed 108,438 COVID-19 tests.    *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 29, 2021).  *See COVID-19*, Fed. Bureau of Prisons, https://bit.ly/2XeiYH1.

With respect to Forrest City Medium, where the defendant is now a prisoner, as of March 29, 2021, the BOP reported that two inmates and 10 staff have tested positive for COVID-19 and 357 inmates and 52 staff have recovered at the facility. And, 175 staff and 123 inmates have been inoculated with the vaccine.  *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 29, 2021).

## IV.  Discussion

Smith has moved for compassionate release on the ground that his medical conditions render him particularly vulnerable to COVID-19. ECF 158 at 2. In particular, defendant states that he has a "respiratory chronic care condition (asthma and heart murmur) that will surely expose his

---

[4] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19.  *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020),  https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems.*" America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html.

immune system" and leave him susceptible to COVID-19.  ECF 158 at 2; *see* ECF 166-2 (Medical Records) at 2, 26.  The defendant's medical records also reflect that defendant has a body mass index ("BMI") of 31.5. ECF 166-2 at 8.

The government "does not contest that the defendant has demonstrated health issues sufficient for the Court to *consider* the request" for compassionate release.  ECF 166 at 2 (emphasis added by government).  But, the government does not believe the health conditions warrant release. *Id.* at 8.  In addition, the government opposes a reduction of the defendant's sentence, in light of the factors under 18 U.S.C. § 3553(a).  *Id.*  Moreover, the government contends that defendant would pose a danger to the community if released.  *Id.*

As noted, Smith's medical records show that he currently has a BMI of 31.5, which qualifies as obesity. ECF 166-2 at 8. The CDC identifies obesity as a condition that creates an "increased risk of severe illness" from COVID-19. *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Feb. 3, 2021), https://bit.ly/38S4NfY.  And, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."  *Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, Ctrs. For Disease Control & Prevention (May 14, 2020), https://bit.ly/2WBcB16.  In addition to obesity, Smith suffers from asthma and a heart murmur.

Numerous courts have found that, in light of the COVID-19 pandemic, serious chronic medical conditions, including obesity and asthma, qualify as compelling reasons for compassionate release. *See, e.g., United States v. Staten*, PJM-01-284-4, 2020 WL 4904270, at *2 (D. Md. Aug. 18, 2020) (finding an "extraordinary and compelling reason" for compassionate release based on a BMI of 38); *United States v. Head*, 2:08-cr-00093-KJM-2, 2020 WL 3180149 (E.D. Cal. June 15, 2020) (finding defendant's chronic asthma presented an extraordinary and

compelling reason warranting compassionate release); *United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release in light of COVID-19); *United States v. Dawson*, No. 18-40085, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release based on a defendant's obesity).

Accordingly, I am satisfied that Smith satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must next consider whether, if released, Smith would pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Relief is appropriate under 18 U.S.C. § 3582(c)(1)(A) only if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). To determine whether a defendant is a danger to the community, the Court must consider the factors under 18 U.S.C. § 3142(g), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the danger that release would pose to any person or the community.

In addition, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3582(c)(1)(A). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As I see it, the factors under § 3553(a) and § 3142(g) do not weigh in favor of reducing Smith's sentence at this time. The seriousness of the underlying offense, coupled with Smith's prior record, are particularly relevant to the analysis.

As a juvenile, defendant was arrested twenty times between the ages of 8 and 17. ECF 67, ¶ 80. Records reflect that defendant was sentenced to an unspecified term of probation in 1999 for burglary in the fourth degree. *Id.* He was also committed to the Department of Juvenile Services twice in 2001 for unauthorized taking of a motor vehicle and twice in 2003 for "unauthorized use." *Id.* In 2005, after turning 18, Smith was convicted of burglary in the first degree and sentenced to ten years' imprisonment, with nine years suspended. *Id.* ¶ 82. Thereafter, in 2006 he was convicted of unlawful taking of a motor vehicle and violation of his probation for the 2005 offense, for which he was sentenced to four years' incarceration.  He was released in 2008. *Id.* ¶ 88. In 2009, just one year after defendant's release, he was convicted of possession of a deadly weapon and sentenced to two months in prison. *Id.* ¶ 90. There were other convictions as well. *See, e.g., id.* ¶¶ 93, 95, 98, 100. Repeatedly, the criminal justice system was very lenient with the defendant. Instead of taking advantage of that leniency, Smith continued on the wrong path.  Indeed, the underlying case involved seven armed robberies in the course of a few weeks.

Moreover, the defendant has only served about 63% of his sentence, exclusive of good time credit. And, his sentence was significantly below the Guidelines range.

Given the serious nature of the underlying offense, coupled with defendant's prior criminal history, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

### V.  Conclusion

For the foregoing reasons, I shall deny the Motion, without prejudice.

An Order follows, consistent with this Memorandum Opinion.


Date:   April 1, 2021                                        _____/s/_____

                                                            Ellen Lipton Hollander
                                                            United States District Judge